UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Craig Gathers, # 341480, | ) C/A No.: 2:12-2206-JMC-BHH |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Report and Recommendation |
| SGT. Clarey; Ms. Wineglass; | ) |
| Michael A. Schwartz; Ms. Jane Doe; | ) |
| Officer Dryer; Officer Willer; | ) |
| "*independently and in their criteria,*" | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

The Plaintiff, currently a state prisoner, is proceeding *pro se.* Plaintiff filed this action pursuant to Title 42, United States Code, Section 1983 concerning events that occurred while he was detained at the Georgetown County Detention Center ("GCDC").[1] This matter is before the Court upon Defendant's Motion for Summary Judgement (Dkt. No. 19). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

## PROCEDURAL HISTORY

The Plaintiff brought this action on or about August 3, 2012. (Dkt No. 1). On August 24, 2012, the undersigned recommended that Defendants Wineglass, Doe and Schwartz be summarily dismissed from this action. (Dkt. No. 9). Plaintiff filed two Objections to that Report and Recommendation. (Dkt. Nos. 13, 24). Service was authorized for the remaining

_____

[1]Plaintiff seeks injunctive relief, but because he is no longer detained at the GCDC, his claims for injunctive relief are moot.

1

Defendants (Clarey, Dryer, and Willer) on August 24, 2012. (Dkt. No. 7). Executed summonses were returned to the Court for Defendants Clarey and Dryer on October 18, 2012 showing these Defendants were served on September 18, 2012. (Dkt. No. 17).

On November 20, 2012, Defendants filed a Motion for Summary Judgment (Dkt No. 19).[2] By order filed November 21, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the Motion. (Dkt No. 20). On January 8, 2013, the undersigned issued an Order directing the Plaintiff to file a response to the Motion for Summary Judgment on or before January 28, 2013. Plaintiff was advised his action would be subject to dismissal for failure to prosecute if he failed to timely respond. (Dkt. No. 22). Plaintiff filed his Response in Opposition to Defendants' Motion for Summary Judgment on or about January 17, 2013. (Dkt. No. 25).

_Defendant Willer_

An unexecuted summons for Defendant Willer was also returned to the Court on October, 18, 2012, with the notation "no such person employed at GCDC." (Dkt. No. 18). This notation was made by the U.S. Marshals Service. In the Order authorizing service

---

[2]

According to the Answer filed by the Defendants, (Dkt. No. 15), they also seek dismissal of this matter pursuant to Federal Rule of Civil Procedure 12(b)(6). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, _Federal Practice and Procedure_ § 1356 (1990)). Because Defendants have now filed a Motion for Summary Judgment, and have attached to their Motion matters that are outside of the pleadings, it is presumed the Defendants have abandoned their Motion to Dismiss. Consequently, this Report and Recommendation addresses Defendants' Motion for Summary Judgment.

upon Defendants Clarey, Dryer, and Willer, the United States Marshals Service was advised as follows:

> [The Marshals Service] must expend a reasonable investigative effort to locate a defendant once a defendant is properly identified. (citations omitted). If the information provided by Plaintiff on the Forms USM-285 is not sufficient for the Marshal to effect service of process, after reasonable investigative efforts have been made to locate a properly identified defendant, the Marshal should so note in the 'Remarks' section at the bottom of the Form USM-285.

(Dkt. No. 7).

The time limit to accomplish service is governed by Rule 4(m) of the Federal Rules of Civil Procedure. The 120-day limit established by Rule 4(m) will not run during the initial review of this case; therefore, the 120 days begins on the date on which the summons(es) are issued. Robinson v. Clipse, 602 F.3d 605, 608-09 (4th Cir. 2010)(tolling during initial review).

In the order authorizing service of process, Plaintiff was directed to the requirements of Rule 4(m), and was apprised that: "[i]f a defendant is not served within 120 days after the complaint it filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time. Plaintiff is also apprised that if he can show good cause for the failure, the court must extend the time for service for an appropriate period."[3] **Unserved defendants may be dismissed as parties to this case if not served within the time**

---

[3]

Commencement of a state law claim is determined by Rule 3 of the South Carolina Rules of Civil Procedure, rather than Rule 4 of the Federal Rules of Civil Procedure, and could impact the time allowed for service of process within the applicable statute of limitations for the state law claim.

3

**limit governed by Rule 4(m) and this Order**." (Dkt No. 7).

The summonses for Defendants Clarey, Dryer, and Willer, were issued on August 24, 2013. (Dkt. No. 11). Defendant Willer, however, remains an unserved Defendant, and 120 days have now passed from the date the summonses were issued.

Defendants filed an answer on October 11, 2012. (Dkt. No. 15). Defendants' Second Defense is that Plaintiff had failed to "serve and/or properly serve the[ ] Defendants with the Summons and Complaint in this matter, and therefore, the Complaint should be dismissed as to these Defendants, pursuant to Rules 12(b)(2), 12(b)(4), and 12(b)(5) of the Federal Rules of Civil Procedure." Id. at 2.[4]

Because 120 or more days have passed since the issuance of the summonses, and Defendant Willer remains an unserved Defendant, he would be entitled to dismissal from this action pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(4), and 12(b)(5).

## **FACTS**

### (*Overview*)

Plaintiff, Craig Gathers, who at all times relevant to his Complaint was a detainee housed at the GCDC, brings this action alleging that Defendants violated his Constitutional rights. On March 29, 2010, Plaintiff was involved in an altercation with another detainee in G-Block of the GCDC. (Dkt. No. 19-1, p. 1) Defendants Clarey and Dryer responded when Officer Hewitt alerted them to the fight. Id. at 2. Plaintiff was taken to the medical unit where it was observed that the left side of his face was red. Plaintiff also had a scratch on his right

---

[4]

Defendants Answer was filed prior to service of process upon Defendants Clarey and Dryer.

arm. Plaintiff was moved to D-Block. Id.

Later the same day, it was discovered that Plaintiff had additional injuries which officers knew were not present when Plaintiff had initially been taken to the medical unit. Plaintiff would not name his attackers, but stated "two or three" detainees were involved. Plaintiff was again taken to the medical unit where it was noted he had a "busted" upper lip, red blotching on the left side of his face, and a red mark on the left side of his neck. He was transported to Georgetown Memorial Hospital. Id.

At the hospital, CT scans of Plaintiff's head and face were taken. No fractures were detected. Plaintiff also received a neurological exam. His vital signs were checked and he received stitches in his lip. Upon his return to GCDC, he was prescribed Keflex and ibuprophen. Plaintiff's stitches were removed a week later. Plaintiff was transferred to the South Carolina Department of Corrections on June 24, 2010. Id.

Plaintiff alleges that he was placed, intentionally and without cause, in an overcrowded cell with detainees who were known to be violent. Plaintiff further alleges the medical staff refused to provide him with medical treatment for a number of hours after the altercation. Id. at 1. See also (Dkt. No. 1, p. 4, 5). Plaintiff claims there was no valid reason to place him in a crowded cell because at least one other detainee was in a cell by himself during the same time period. Id. at 5.

*(The Complaint)*

Plaintiff alleges he is raising the following causes of action: "negligent tortious behavior; deliberate indifference; failure to act in the face of misconduct; supervisory liability; constitutional injuries inflicted by subordinates; affirmative duty to act; breach of duty; 14[th] and 8[th] Amendment[s]; emotional distress; [and] grossly negligent."

5

(Dkt. No. 1, p. 3).

Plaintiff claims that the "Supervisors" at GCDC had "actual constructive knowledge" that their subordinates "engaged in conduct that [p]osed 'a pervasive and unreasonable risk' and injury to the" Plaintiff. Id. at 4. Specifically, Plaintiff states that he was placed in a cell with three (3) other inmates who had been separated from the other inmates "for being in gang activity." Id. According to the Plaintiff, Defendants Dryer and Willer knew the detainees "had assaulted several other inmates while at the Center. These Officers deliberately put me in the cell with those (3) inmates (gang members). This was an unsafe situation and grossly negligent." Id. Plaintiff states that he was "kicked" and "punched" for 10 to 15 minutes by two (2) of the three (3) detainees, causing a "busted" lip and two black eyes. Plaintiff said he had "blood all over [his] face and shirt." Id.

Plaintiff asserts that after he was assaulted he attempted to get the attention of officers by "yelling from time to time." Id. at 5. He further claims that "for 2 to 3 hours no officers did a [routine] check to see if [he] was alright." Id. Plaintiff states that "after hours went by of me banging on the door for some help, Officer Dryer and Sgt. Clarey ... moved [him] to where they should have put [him] in the 1st place, in a cell with one inmate in it." Id. Plaintiff claims the inmate had been single celled for two days. Id.

Plaintiff states that he asked to go to the hospital, and to get some medicine. Plaintiff claims four and a half hours passed before a nurse authorized Plaintiff's transport to the hospital. Defendant Dryer and another officer took Plaintiff to the hospital. Id.

Plaintiff claims that the two detainees who assaulted him were known to have assaulted two other detainees, Larry Gibbs and Woodrow Lenin, over canteen food. Id. at 6. Plaintiff argues, therefore, that the assault upon him was not an isolated incident. Id.

6

Plaintiff alleges the Defendants waited eight (8) days to take pictures of his face, and to take his voluntary statement. Id. Plaintiff further alleges he wrote several grievances concerning the matter. Id. He believes that Defendants Clarey, Wineglass, Schwartz, and Doe should assume liability for their subordinates. Id. at 9.

In the relief section of his Complaint, Plaintiff seeks a preliminary injunction, declaratory relief, and compensatory and punitive money damages. Id. at 10-11.

## APPLICABLE LAW

### *Summary Judgment Motion Standard*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, Defendants have moved for summary judgment (Dkt. No. 19). They have submitted the following attachments to their Motion: (1) the affidavit of Sgt. Joanne

Clarey (Dkt. No. 19-2); (2) the affidavit of Sgt. James Drye (Dkt. No. 19-3); (3) the affidavit of Major Moore (Dkt No. 19-4); (4) the incident report of Jeffery Wheeler (Dkt. No. 19-5); (5) the incident report of A. Tyrone Parson (Dkt. No. 19-6); (6) the incident report of Mary Hewitt (Dkt. No. 19-7); (7) the incident report of Sgt. Joanne Clarey (Dkt. No. 19-8); (8) the incident report of Jeffrey E. Wheeler (Dkt. No. 19-9); (9) Progress Notes from Southeastern Group, Inc. (Dkt No. 19-10); (10) a Diagnostic Imaging Report from the Georgetown Memorial Hospital (Dkt. No. 19-11); (11) Physician's Orders from Southeastern Service Group (Dkt. No. 19-12); and (12) a Medication Administration Record (Dkt. No. 19-13). The undersigned will consider the arguments presented in turn.

## *Motion for Summary Judgment filed by Defendants*

Defendants raise the following arguments and defenses in their Motion: (1) Plaintiff has failed to exhaust his administrative remedies; (2) the actions or inactions claimed by Plaintiff did not rise to the level of a Constitutional violation; (3) Defendants are entitled to qualified immunity; (4) Defendants are entitled to Eleventh Amendment immunity; (5) Defendants assert all available defenses pursuant to the South Carolina Tort Claims Act (SCTCA); (6) Plaintiff is not entitled to relief under any theory of vicarious liablility; (7) Defendants are not "persons" subject to a Section 1983 suit; (8) Plaintiff's request for prospective injunctive relief is moot; (9) Defendants are entitled to summary judgment on any state law claims; and (10) Plaintiff should receive a "strike" pursuant to 28 U.S.C. § 1915.

### *1. Exhaustion*

The Defendants contend the Plaintiff has failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust

administrative remedies before filing a § 1983 action concerning his confinement. 42 U.S.C.A. § 1997e states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. In Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2380 (2006), the United States Supreme Court held that the PLRA exhaustion requirement requires proper exhaustion. The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that the agency holds out, and doing so properly." Id. at 2380-81. (Internal quotations and citations omitted). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. Id.

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Woodford, 126 S.Ct. at 2385 (quoting McCarthy v. Madigan, 503 U.S. 140, 145, 112 S.Ct. 1081 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." Id. Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

As an initial matter, although Defendants allege Plaintiff has not exhausted his administrative remedies, they provide no documentation or affidavits in support of their argument. Instead, Defendants argue that Plaintiff admits he failed to exhaust, and that he "presents no proof that he has grieved all these matters against each of the Defendants. By his own admission, this action is not timely." (Dkt No. 19-1, p. 4). This misstates Plaintiff's position. Plaintiff claims he had "written several grievances on this matter, to no avail. They have made no effort to render any kind of ratification of my grievances." (Dkt. No. 1, p. 6). Thus, Plaintiff appears to allege that his grievances were ignored, making his administrative remedies unavailable to him. Due to the lack of information in the record concerning the exhaustion issue, the undersigned declines to dismiss the Complaint for failure to exhaust administrative remedies.

## 2. *Negligence/Gross Negligence*

Plaintiff alleges the Defendants engaged in "negligent tortious behavior" and were also "grossly negligent." (Dkt. No. 1, p. 3). It is a well settled rule of law that claims of negligence do not support an action for damages under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-336 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-348 (1986); Ruefly v. Landon, 825 F.2d 792, 793-794 (4th Cir. 1987). Negligence and gross negligence are causes of action under South Carolina law, and would be cognizable in this court under the diversity statute, if that statute's requirements are satisfied.

The diversity statute, 28 U.S.C. § 1332(a), requires complete diversity of parties and an amount in controversy in excess of seventy-five thousand dollars ($75,000.00):

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between–

10

(1) citizens of different States[.]

28 U.S.C. § 1332. Complete diversity of parties in a case means that no party on one side may be a citizen of the same State as any party on the other side. See Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 372-374 & nn. 13-16 (1978). This court has no diversity jurisdiction under 28 U.S.C. § 1332 because the plaintiff and the defendants in this case are residents of the State of South Carolina. Hence, complete diversity of parties is absent in the case *sub judice*.

Under South Carolina law, the Plaintiff's negligence claims are cognizable under the South Carolina Tort Claims Act, § 15-78-10 *et seq.*, South Carolina Code of Laws. This act provides redress for any loss or injury from an occurrence of negligence proximately caused by a person employed by the State of South Carolina, a state agency, or political subdivision while acting within the scope of his or her employment.

Suits brought solely under the South Carolina Tort Claims Act must be brought in a state court within the boundaries of South Carolina. Under the South Carolina Tort Claims Act, there are different limitations periods for "verified" claims and claims which fail to comply strictly with the verified claim procedure required by S.C. Code § 15-78-80. Joubert v. South Carolina Department of Social Services, 341 S.C. 176, 189-190, 534 S.E.2d 1, 8 (S.C.Ct.App. 2000)(outlining differences between "verified" claims filed in accordance with S.C. Code § 15-78-80 as subject to three-year limitations period and all other claims being subject to two-year limitations period). The benefit to a plaintiff for filing a verified claim is that his or her limitations period is extended from two (2) years to three (3) years. In other words, if a plaintiff fails to file a claim that strictly complies with S.C. Code § 15-78-80, in

11

the filing of a non-verified claim under the South Carolina Tort Claims Act, the limitations period is only two (2) years. Plaintiffs failing to pursue their claims within the appropriate limitations period will be barred from suit.  See, e.g., Murphy v. Richland Memorial Hospital, 317 S.C. 560, 455 S.E.2d 688 (1995); Vines v. Self Memorial Hospital, 314 S.C. 305, 443 S.E.2d 909 (1994); Pollard v. County of Florence, 314 S.C. 397, 444 S.E.2d 534 (S.C.Ct.App. 1994).

Plaintiff filed this action on August 3, 2012, over two years, but less than three years, from the date of the altercation - March 29, 2010.

Defendants assert all available defenses pursuant to the South Carolina Tort Claims Act (SCTCA). A Court, however, has "wide latitude in determining whether or not to retain jurisdiction over [the] state claims. (Citations omitted). Hutcherson v. Lim, 444 Fed.Appx. 679, 680, 2011 WL 3805753 (4th Cir. August 30, 2011). "In exercising its discretion, the district court should consider 'convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy.'" (citations omitted). Id. Additionally, '[a] district court can consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case. If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account....' (citations omitted)." Id.

Based on the foregoing standard, and after a careful consideration of the record in this matter, the undersigned recommends that the Court decline to exercise supplemental jurisdiction over the state law claims. Thus, it is not necessary for this Court to determine

if Plaintiff's state law claims are barred by the applicable statute of limitations.[5]

### 3. *Failure to Protect*

Plaintiff alleges, among other things: "failure to act in the face of misconduct," "affirmative duty to act," "breach of duty," and "14[th] and 8[th] Amendment[s]." (Dkt. No. 1, p. 3).

Because Plaintiff was a pretrial detainee when he filed his § 1983 action his claim against the Defendants for their alleged failure to protect him is governed by the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment. Bell v. Wolfish, 441 U.S. 520, 537 n. 16 (1979).

As a practical matter, however, courts do not always distinguish between the Eighth and Fourteenth Amendments in the context of a pretrial detainee's § 1983 claim. Hill v. Nicodemus, 979 F.2d 987, 990-92 (4th Cir.1992); Belcher v. Oliver, 898 F.2d 32, 33 (4th Cir.1990). Despite the Supreme Court's suggestion that pretrial detainees may be afforded greater protection than convicted prisoners, federal appellate courts have generally analyzed both situations under the same "deliberate indifference" standard. See Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir.1996); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir.1996) (en banc); Zarnes v. Rhodes, 64 F.3d 285, 290 (7th Cir.1995); Hill, 979 F.2d at 991 n. * (citing cases); Johnson v. Busby, 953 F.2d 349, 351 (8th Cir.1992); Bass v. Jackson, 790 F.2d 260, 262-63 (2d Cir.1986).

---

[5]

The statute of limitations defense (# 15) was raised in Defendant's Answer, (Dkt. No. 15, p. 6), but was not listed as a defense in their Motion for Summary Judgment. (Dkt. No. 19).

The deliberate indifference standard has been applied by the Supreme Court pursuant to the Eighth Amendment in prison cases of two types - those that address "conditions of confinement" and those that address "excessive force". In the latter cases, a plaintiff must show "that officials applied force maliciously and sadistically for the very purpose of causing harm." Farmer v. Brennan, 511 U.S. 825, 835 (internal quotation marks and citations omitted); However, that "standard of purposeful or knowing conduct is not ... necessary to satisfy the mens rea requirement of deliberate indifference for claims challenging conditions of confinement; 'the very high state of mind prescribed by Whitley does not apply to prison conditions cases.'" (citations omitted) Id. at 836. Instead, the "conditions of confinement" cases assessed various acts or omissions by prison officials in the routine administration of their facilities that caused prisoners to suffer harm. Estelle v. Gamble, 429 U.S. 97 (1976); Hutto v. Finney, 437 U.S. 678 (1978); Rhodes v. Chapman, 452 U.S. 337 (1981); Wilson v. Seiter, 501 U.S. 294 (1991); Helling v. McKinney, 509 U.S. 25 (1993); and Farmer v. Brennan, 511 U.S. 825 (1994).

In Farmer, the Supreme Court defined "deliberate indifference" for prisoner litigation under the Eighth Amendment. The Court began by observing that a prison official's "deliberate indifference" to "a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828. An Eighth Amendment claim must articulate both an objective and a subjective component. Id. at 834. To satisfy the objective component, the plaintiff must show that an injury is sufficiently serious. "[A] prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. (quotation omitted). The second component of an Eighth Amendment claim is subjective. It requires that the defendant have had a sufficiently culpable state of mind. Id. "In prison condition

14

cases that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. (citation omitted).

Defendants contend that "Plaintiff has failed to present any evidence that Defendants wantonly and obdurately failed to take precautions for his safety or showed deliberate indifference to a specific known risk of harm. There is no evidence in the record that Defendants were aware of any potential harm to Plaintiff...." (Dkt No. 19-1, p. 7).

Defendants offer a number of incident reports and affidavits in support of their position. Defendant Clarey submitted an affidavit, (Dkt. No. 19-2), and an officer's incident report, (Dkt. No. 19-8), concerning the allegations. Specifically, Defendant Clarey averred that "[a]t no time did the Plaintiff ever tell any officer or employee of the [GCDC] that he had a problem with or had been threatened by any other inmate." (Dkt. No. 19-2, p. 1). She added that "[d]uring the booking process, detainees are asked to disclose any issues they have with other incarcerated inmates or whether or not they have gang affiliations. The Plaintiff did neither of these." Id. at 2. According to Defendant Clarey, "Plaintiff never informed [her] of any risk or threats from any other inmates housed at the [GCDC]." Id.

Defendant Dryer also submitted an affidavit which corroborates the statements of Defendant Clarey. Defendant Dryer stated that "[a]t no time did the Plaintiff ever disclose to me or any other employee at [GCDC] that he had been threatened or was in danger from any other inmate." (Dkt. No. 19-3, p. 1). He also indicated that "[a]t no time during booking or his detainment did [Plaintiff] disclose any type of gang affiliation or other affiliation which [would] make him a target for other inmates." Id.

An incident report was also prepared by Jeffery E. Wheeler. (Dkt. No. 19-9). Officer Wheeler stated that "Inmate Geathers did not say who had hit him only that it was 'two or

15

three inmates.'" Id. This was corroborated in the incident report filed by Defendant Clarey. (Dkt. No. 19-8). Defendant Clarey stated, in part, that she questioned inmate Gathers while he was in the medical unit for the second time. During the questioning he stated that "two inmates in D-5 jumped him. He stated he didn't want to press charges because they will get him but inmate Dexter Grant did not take part in the beating." Id. at 2.

Plaintiff alleges that he was placed, intentionally and without cause, in an overcrowded cell with detainees who were known to be violent. Plaintiff claims there was no valid reason to place him there because at least one other detainee was in a cell by himself during the same time period. (Dkt. No. 1, p. 5). Specifically, Plaintiff states that he was placed in a cell with three (3) other inmates who had been separated from the other inmates "for being in gang activity." Id. at 4. According to the Plaintiff, Defendants Dryer and Willer knew the detainees "had assaulted several other inmates while at the Center. These Officers deliberately put me in the cell with those (3) inmates (gang members)." Id.

Plaintiff also argues that the two detainees who assaulted him were known to have assaulted two other detainees, Larry Gibbs and Woodrow Lenin, over canteen food. Id. at 6. Plaintiff claims, therefore, that the assault upon him was not an isolated incident. Id. Plaintiff states that "after hours went by of me banging on the door for some help, Officer Dryer and Sgt. Clarey ... moved  [him] to where they should have put [him] in the 1st place, in a cell with one inmate in it." Id. at 5. Plaintiff claims the inmate had been single celled for two days. Id. Plaintiff also claims that the "Supervisors" at GCDC had "actual constructive knowledge" that their subordinates "engaged in conduct that [p]osed 'a pervasive and unreasonable risk' and injury to the" Plaintiff. Id. at 4.

As noted above, the standard of purposeful or knowing conduct is not necessary to

16

satisfy the mens rea requirement of deliberate indifference for claims challenging conditions of confinement. Rather, the very high state of mind prescribed by <u>Whitley</u> does not apply to prison conditions cases. Instead, the "conditions of confinement" cases assessed various acts or omissions by prison officials in the routine administration of their facilities that caused prisoners to suffer harm.

Thus, as set out in <u>Farmer</u>, <u>supra</u>, to satisfy the objective component, the Plaintiff must show that an injury is sufficiently serious. "[A] prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." <u>Id</u>. (quotation omitted).

In this instance, Plaintiff has failed to show that the injuries he sustained were sufficiently serious so that the "minimal civilized measure of life's necessities" were denied to him. Plaintiff was initially taken to the medical unit where it was observed that the left side of his face was red and he had a scratch on his right arm. (Dkt. No. 19-1, p. 2). Later the same day it was discovered that Plaintiff had a "busted" upper lip, red blotching on the left side of his face, and a red mark on the left side of his neck. <u>Id</u>. When he was transported to Georgetown Memorial Hospital, CT scans of Plaintiff's head and face did not reveal any fractures. Plaintiff's neurological exam and vital signs were normal. He received stitches in his lip, which were removed a week later. <u>Id</u>. These types of *de minimus* injuries are not so sufficiently serious that they meet the objective prong of the <u>Farmer</u> test.

Assuming for argument's sake that the injuries Plaintiff complains of met the objective component required under <u>Farmer</u>, Plaintiff has not established that any of the Defendants had a sufficiently culpable state of mind to harm him. In prison condition cases, the subjective component under <u>Farmer</u> requires that a defendant's state of mind be

17

deliberately indifferent to an inmate's health or safety.

Plaintiff argues that Defendants Dryer and Willer knew the detainees had assaulted several other inmates while at the Center. (Dkt. No. 1, p. 4). Plaintiff also claims that the two detainees who assaulted him were known to have assaulted two other detainees, Larry Gibbs and Woodrow Lenin, over canteen food. Id. at 6. However, this is the only example to which Plaintiff sites. Thus, while Plaintiff argues that the assault upon him was not an isolated incident, it appears to be the only other incident of record concerning his attackers. Additionally, the attack upon the other detainees involved food. While Plaintiff maintains that the Officers deliberately put him in a cell with three gang members, Id. at 4, he has not established, absent his bald assertions, that the officers had any reason to believe the detainees would attack Plaintiff. Nor has Plaintiff established that his attackers were gang members. Additionally, if Defendants had no reason to believe Plaintiff would be harmed, the fact that there was only one individual in another cell would not be relevant.

Indeed, the affidavits of Defendant's Clarey and Dryer reveal that Plaintiff never told any officer or employee at the GCDC that he had a problem with, or had been threatened by, any other inmate. During the booking process, detainees are asked to disclose any issues they have with other incarcerated inmates or whether or not they have gang affiliations. The affidavits submitted show that Plaintiff did not disclose any gang affiliations or issues with other detainees. (Dkt Nos. 19-2, 19-3).

Consequently, Plaintiff fails to meet the first and second prongs of the test set forth in Farmer. The Defendants are entitled to summary judgment on Plaintiff's failure to protect claim.

4. *Deliberate Indifference to Medical Needs*

In <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." <u>Estelle</u>, 429 U.S. at 104 (internal citations omitted).[6] To prevail on an Eighth Amendment deliberate indifference claim, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." <u>Johnson v. Quinones</u>, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." <u>Id</u>. It is well-settled that mere negligence does not constitute deliberate indifference. <u>Estelle</u>, 429 U.S. at 105-06; <u>Grayson v. Peed</u>, 195 F.3d 692, 695-96 (4th Cir. 1999)(deliberate indifference is a very high standard - a showing of mere negligence will not meet it).

Plaintiff complains that Defendants were deliberately indifferent to his serious medical needs. A review of the record, however, shows that, after the first incident, Plaintiff was taken to the medical unit where it was observed that the left side of his face was red and he had a scratch on his right arm. (Dkt. No. 19-1, p. 2).

Later the same day, it was discovered that Plaintiff had additional injuries which officers knew were not present when Plaintiff had initially been taken to the medical unit.

---

[6]

The Fourteenth Amendment, rather than the Eighth Amendment, governs Plaintiff's claims because Plaintiff was a pre-trial detainee. However, the governing standard is the same under either the Eighth or Fourteenth Amendment. <u>See Belcher v. Oliver</u>, 898 F.2d 32, 34 (4th Cir.1990); <u>Lancaster v. Monroe County, Alabama</u>, 116 F.3d 1419, 1425 n. 6 (11th Cir.1997).

Plaintiff was again taken to the medical unit where it was noted he had a "busted" upper lip, red blotching on the left side of his face, and a red mark on the left side of his neck. He was transported to Georgetown Memorial Hospital. Id.

The Plaintiff alleges, however, that the medical staff at GCDC refused to provide him with medical treatment for a number of hours after the second altercation. (Dkt. No. 1, p. 4, 5). Plaintiff asserts that after he was assaulted he attempted to get the attention of officers by "yelling from time to time." Id. at 5. He further claims that "for 2 to 3 hours no officers did a [routine] check to see if [he] was alright." Id. Plaintiff states that "after hours went by of me banging on the door for some help, Officer Dryer and Sgt. Clarey ... moved [him] .... Id. Plaintiff states that he asked to go to the hospital, and to get some medicine. Plaintiff claims four and a half hours passed before a nurse authorized Plaintiff's transport to the hospital. Id. Plaintiff alleges the Defendants waited eight (8) days to take pictures of his face, and to take his voluntary statement. Id. at 6. Thus, although Plaintiff concedes he was taken to the hospital and treated, he believes his medical assistance was unduly delayed.

Defendants argue that Plaintiff received proper medical care in a timely manner. Defendant Dryer submitted an affidavit in support of Defendant's Motion for Summary Judgment. (Dkt. No. 19-3). In his affidavit, Defendant Dryer stated that "[t]here were no delays by any officer." Id.

Defendant Clarey submitted an incident report in which she noted that "Inmate Geathers was ...taken to D-5. (Dkt. No. 19-8, p. 1). Inmate Gathers was banging on the door so myself and Officer Drye entered D-Block to see what he wanted as we removed him he stated he wanted another cell because that one already had 3 people in it. Id. at 1-

20

2. [Defendant Clarey] then moved [Plaintiff] to D-2. [She] saw his busted lip but thought that he already had it from the fight in G-Block. About 15 mins. later Officer Wheeler called and stated that [he] and officer Drye had taken Inmate Gathers back to medical because he had a busted lip and they kn[e]w this [hadn't] happened in G-Block." Id. at 2.

Plaintiff must objectively show that the deprivation of a basic human need was sufficiently serious, **and** (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." Id.

Because Plaintiff was taken to, and treated at, Georgetown Memorial Hospital, he cannot establish that he was deprived of a basic human need. The evidence shows that, upon discovering that Plaintiff had been injured a second time, he was taken to the medical unit. Nonetheless, Plaintiff claims he was left in his cell after the altercation, causing a delay in his treatment. However, he offers no proof to establish the Defendants knew he had been injured and deliberately left him there. And although Plaintiff claims that it took four and a half hours before a nurse authorized Plaintiff's transport to the hospital, he does not offer any proof that this delay was intentional. Thus, even assuming that Plaintiff's allegations regarding the delays are true, the passing of time, in and of itself, is insufficient to state a cognizable constitutional claim. Without more, Plaintiff has failed to establish that Defendants deliberately, and with a sufficiently culpable state of mind, delayed his medical treatment. Furthermore, Plaintiff has not offered any evidence that the delay, if it existed, adversely effected his prognosis. To the contrary, Plaintiff's face was not fractured, he did

not have neurological damage, and his vital signs were normal. He was prescribed medication, and he received stitches. Plaintiff's deliberate indifference to medical needs claim is without merit. The Defendants are entitled to summary judgment on this claim.[7]

### 5. Qualified Immunity

Defendants argue that they are entitled to qualified immunity from all claims as a matter of law. The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)(citations omitted). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 232 (2009) citing Saucier v. Katz, 533 U.S. 194, 201 (2001).

Having found that Plaintiff has not raised a viable § 1983 claim, the Court need not determine whether any rights Plaintiff has asserted were "clearly established" for purposes of qualified immunity.  See DiMeglio v. Haines, 45 F.3d 790, 799 (4th Cir.1995) ("In many

---

[7]The undersigned notes that Plaintiff attempts to bring a claim for "emotional distress." (See Dkt. No. 1 at 3 of 11.) Because Plaintiff's § 1983 claims fail on the merits, Plaintiff is not entitled to recover damages for emotional distress on his federal claims. See Knussman v. Maryland, 272 F.3d 625, 639 (4th Cir. 2001) ("Damages under § 1983 are intended to compensate for actual injuries caused by constitutional violations; therefore, a § 1983 plaintiff alleging emotional distress must demonstrate that the emotional distress resulted from the constitutional violation itself.").

cases where a defendant has asserted qualified immunity, dismissal or even an award of summary judgment may be obviously warranted, based upon existing law, without the court ever ruling on the qualified immunity question."); Gordon v. Kidd, 971 F.2d 1087, 1093 (4th Cir.1992) ("In analyzing the appeal of a denial of summary judgment on qualified immunity grounds, it is necessary first to identify the specific constitutional right allegedly violated, then to inquire whether at the time of the alleged violation it was clearly established...").

### 6. _Supervisory Liability_

Plaintiff alleges "supervisory liability," and "constitutional injuries inflicted by subordinates." Plaintiff claims that the "Supervisors" at GCDC had "actual constructive knowledge" that their subordinates "engaged in conduct that [p]osed 'a pervasive and unreasonable risk' and injury to the" Plaintiff. (Dkt. No. 1, p. 4). He believes that Defendants Clarey, Wineglass, Schwartz, and Doe should assume liability for their subordinates. Id. at 9.

Defendants Wineglass, Schwartz, and Doe were recommended for summary dismissal in a Report and Recommendation entered on August 24, 2012 (Dkt. No. 9).

As for Defendant Clarey, vicarious liability is inapplicable to § 1983 suits, unless a plaintiff has pleaded that each Government-official defendant, _through the official's own individual actions_, has violated the Constitution. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (emphasis added). Although Plaintiff states that he was placed in a cell with three (3) other inmates who had been separated from the other inmates "for being in gang activity," (Dkt. No. 1, p. 4); claims the two detainees who assaulted him were known to have assaulted two other detainees, Larry Gibbs and Woodrow Lenin, over canteen food, Id. at 6; and claims Defendants Dryer and Willer knew the detainees "had assaulted several other

23

inmates while at the Center, Id., he offers no proof to substantiate these statements against Defendants Dryer and Willer, or against Defendant Clarey in her supervisory capacity.

Consequently, Plaintiff's statement that he was placed, intentionally and without cause, in an overcrowded cell with detainees who were known to be violent, standing alone, is simply insufficient to hold Defendant Clarey vicariously liable for the actions of her subordinates.

## CONCLUSION

Wherefore, it is RECOMMENDED that the Motion for Summary Judgment filed by Defendants (Dkt. No. 19) be GRANTED as to Plaintiff's federal claims. The undersigned further RECOMMENDS that the Court decline to exercise supplemental jurisdiction over the state law claims. Finally, it is RECOMMENDED that Defendant Willer be dismissed from this action pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(4), and 12(b)(5).

**IT IS SO RECOMMENDED**.

s/Bruce H. Hendricks
United States Magistrate Judge

August 1, 2013
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report

and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).